J-S39032-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: C.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 692 EDA 2019 |

Appeal from the Order Entered February 6, 2019
in the Court of Common Pleas of Philadelphia County Family Court at
No(s):  CP-51-DP-0002500-2017

| | | |
|---|---|---|
| IN THE INTEREST OF: Z.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: C.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 698 EDA 2019 |

Appeal from the Order Entered February 6, 2019
in the Court of Common Pleas of Philadelphia County Family Court at
No(s):  CP-51-DP-0002501-2017

| | | |
|---|---|---|
| IN THE INTEREST OF: M.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: C.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 704 EDA 2019 |

Appeal from the Order Entered February 6, 2019
in the Court of Common Pleas of Philadelphia County Family Court at
No(s):  CP-51-DP-0002502-2017

J-S39032-19

BEFORE:    GANTMAN, P.J.E., STABILE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                **FILED AUGUST 28, 2019**

Appellant, C.B. ("Mother"), files this appeal from the permanency review orders entered February 6, 2019, in the Philadelphia County Court of Common Pleas, suspending, in part, her telephone contact with her children, J.B., born in February 2011, Z.B., born in April 2013, and M.B., born in November 2014 (collectively, the "Children"). After review, we affirm.

The record reveals that the Philadelphia Department of Human Services ("DHS") obtained an Order of Protective Custody ("OPC") for the Children on September 15, 2017, and the Children were temporarily committed to DHS. Order of Protective Custody, 9/15/17. The Children had been in the care of Z.B. and M.B.'s father, D.B., and his girlfriend. On this date, D.B.'s girlfriend brought the Children to DHS as D.B. had been incarcerated for six months and she could no longer care for them. ***Id.***; ***see also*** Orders of Adjudication and Disposition – Child Dependent, 9/27/17.

Subsequent to a shelter care hearing on September 18, 2017, the Children were adjudicated dependent on September 27, 2017. At the time, Mother's whereabouts were unknown, and J.B.'s father was unknown.[1] Parent locator efforts were ordered as to Mother. The Children were to remain

_____

[*] Former Justice specially assigned to the Superior Court.

[1] While there is indication that D.B. is not J.B.'s father, subsequent to adjudication, D.B. is nonetheless referred to as "father."

- 2 -

committed to DHS with legal and physical custody transferred to DHS. **See** Orders of Adjudication and Disposition – Child Dependent, 9/27/17.

Permanency review hearings were held on December 20, 2017, March 16, 2018, and September 19, 2018, with the Children's commitment and placement in treatment foster care maintained. **See** Permanency Review Orders, 9/19/18; Permanency Review Orders, 3/16/18; Permanency Review Orders, 12/20/17. At the hearings on December 20, 2017, and March 16, 2018, Mother's whereabouts still remained unknown. **See** Permanency Review Orders, 3/16/18; Permanency Review Orders, 12/20/17. Updated PLS ("Parent Locator Service") efforts were ordered on March 16, 2018. **See** Permanency Review Orders, 3/16/18. Her address in Spokane, Washington was placed on the record at the hearing on September 19, 2018. In addition, the court referenced an Interstate Compact on the Placement of Children ("ICPC"). **See** Permanency Review Orders, 9/19/18.

As to the next permanency review hearing held on February 6, 2019,[2] the court stated as follows:

_____

[2] The Children were represented throughout this proceeding and during this permanency review hearing by a guardian *ad litem* ("GAL"), Deborah Ann Fegan, Esquire. This Court extended the requirements of **In re Adoption of L.B.M.**, 639 Pa. 428, 432, 161 A.3d 172, 174 (2017), and its progeny to dependency actions generally. **See L.B.M.**, **supra** (the issue decided was whether 23 Pa.C.S.A. § 2313(a), which mandates the appointment of counsel for children involved in contested involuntary termination of parental rights proceedings, is satisfied by the appointment of a GAL provided that the GAL is an attorney); **see also In re T.S.**, _ Pa. _, 192 A.3d 1080, 1089-90 (2018)

This [c]ourt held a Permanency Review Hearing on February 6, 2019. Nitra Clockley, CUA [("Community Umbrella Agency")] case manager at Turning Points for Children[,] was the first witness to testify and stated she has been on this case since November 2018. She stated J.B., who is 8 years old, is in treatment foster care through The Village. She was last seen on 1/18/2019, and she was safe, all her needs were being met and she was doing well and seemed happy. Regarding Z.B., who is 5 years old, [she] is in treatment foster care through The Village. She was last seen on 2/4/2019, and was safe, all her needs were being met and she is doing well. Regarding M.B., who is 4 years old, she is in treatment foster care through The Village. She was last seen on 2/04/2019, and she was safe, all her needs were being met and she was doing well.

Ms. Clockley testified that Mother's SCP [("Single Case Plan")] objectives were to make herself available to CUA and visit the Children. She stated Mother is located [] in Spokane Washington, and is living with her brother. She has Mother's cell phone number and has spoken to her by telephone. Mother has not traveled to Philadelphia to visit her [c]hildren, however, Mother has telephone contact with them. Ms. Clockley stated the foster parent calls Mother frequently, however, she answers sometimes and sometimes she does not. She asked J.B.[] how she feels about having telephone calls with her Mother and she

---

(holding that the trial court did not err in allowing the children's GAL to act as their sole representative during the termination proceeding because, at two and three years old, they were incapable of expressing their preferred outcome); *see also In re J'K.M.*, 191 A.3d 907 (Pa.Super. 2018) (reversing order denying appointment of a separate counsel for dependency proceedings where there was a conflict between the child's best interests and legal interests). Instantly, upon review, the Children's preferences are not specifically known. We observe, however, the testimony of Ms. Clockley as to J.B.'s conversations with her mother is suggestive that her preference is potentially in conflict with her best interests. If the trial court determined there is a conflict between the Children's preferences and their best interests, they must have separate legal counsel to advocate for those disparate interests in future proceedings. Nonetheless, pursuant to order entered April 25, 2019, the court ordered the appointment of legal counsel for the Children and Carla Beggin, Esquire, was present in this capacity at the termination/goal change hearing on May 29, 2019, along with the GAL, Attorney Fegan.

responded that she was happy about talking to her mommy, and wants to continue to talk to her.

Regarding Z.B., Ms. Clockley testified the therapist informed her that since Z.B.[] has been communicating with her [m]other, she has been displaying behaviors like having triggers, crying, falling out, walking out of therapy sessions, throwing the telephone, not good behavior after communication with her [m]other. The therapist has recommended that communication should be suspended until family therapy occurs because she does not do well after talking to her [m]other. She noted that when she visits Z.B., she is active, talkative, but once she asks about the phone calls with her [m]other, Z.B.[] shuts down, goes over to her foster parent, telling the foster parent that she does not want to leave her and telling her she is the best foster mom, and she does not want to go with the other mom. Ms. Clockley is concerned about Z.B.'s contact with her [m]other. Regarding M.B., she stated [M.B.] has communication on the phone with Mother, however, [M.B.] is silent and does not say anything to her [m]other.

On cross-examination by Meredith Rogers, attorney for Mother, Ms. Clockley testified the telephone calls are initiated by the foster parents and have occurred since December 2018. She does not know the frequency of the calls, however, she noted that Mother has told her she wants communication with her [c]hildren. Ms. Clockley further testified that Mother informed her that she has two other [c]hildren living with her in Spokane. The ICPC process was started in September 2018, however, nothing has occurred to have the Children possibly reunified with Mother. She opined that having more contact between the Children and Mother would be beneficial for reunification, however, it requires more than telephone calls[.] Mother needs to at least make herself available to see her [c]hildren. Ms. Clockley noted that she would contact J.B.'s therapist and inquire whether family therapy could occur over the telephone.

Trial Court Opinion, 5/2/19, at 6-8 (citations to record omitted).

At the conclusion of the hearing, the court again maintained the Children's commitment and placement. Further, while the court ordered the ICPC process to continue, the court suspended Mother's telephone contact

with the Children pending further recommendation of the Children's therapists.[3]  ***See*** Permanency Review Orders, 2/6/19.  The court reasoned,

> Hold on, please.  She remains [in Washington] today.  I ordered the ICPC to be started and apparently it's not progressing very well.  We're going to continue with that process[,] but I'm at a loss to get a true gauge on the best interest of the [C]hildren.
>
> But a few things stick out[.]  [O]ne is, that I need to have the contact between [the C]hildren and [M]other controlled.  **And I'm going to suspend any phone contact with [M]other until I get a recommendation from the [C]hildren's therapist such that would be in the best interest of the [C]hildren and what advance [sic] the best interest**[.]  I'm not sure that's occurring now.  The next is[,] I have to have [M]other testify.  So I want this case next listing at 11:30 because of the time difference[.]  I'm going to schedule it at a later time and I want [M]other to testify in person or by telephone[.]  [S]he must testify at the next listing.  If she's not going to make herself available to the [c]ourt[,] then we're going to start pursuing a goal change in this case, because children will have been in care for almost two years.
>
> I remember the case.  I had hopes that [M]other was going to be in full cooperation with the [c]ourt in trying to transfer the children, I have doubts about whether or not that's occurring, and I want to be able to talk to the mother directly.
>
> Although the hearsay is appropriate, I can't get a good gauge on [M]other's sincerity in wanting to be reunified with these children, and the time is pressing.
>
> It's [two] years now, some negative behavior when the children do have contact with [M]other.  I'm not getting a feeling of the sanguinity about the future of these children and reunification[,] so we must pursue a permanent resolution[.]  [T]he children are young enough.

---

[3] D.B. remained incarcerated at the time of the hearing.  ***See*** DHS Exhibit 1.

So, if [M]other's not going to reunite with them[,] we have to find permanent placement for them[.] [G]ive us a listing back here[,] please.

Notes of Testimony ("N.T."), 2/6/19, at 22-24 (emphasis added).

On March 7, 2019, Mother, through counsel, filed timely notices of appeal, along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), which this Court consolidated *sua sponte* on April 3, 2019.[4, 5]

Notably, thereafter, on May 29, 2019, Mother's parental rights to the Children were involuntarily terminated.[6] **See** Decrees of Involuntary Termination of Parental Rights, 5/29/19.

On appeal, Mother raises the following issue for our review:

1. Whether the [t]rial [c]ourt committed an error of law and abuse of discretion when it suspended telephone contact, the only family visitation to occur between Mother and her Children, until further recommendation of the Children's therapist.

---

[4] Mother filed a motion for reconsideration on February 22, 2019. Review of the certified record does not reveal a ruling with respect to this motion.

[5] We observe that Mother filed separate notices of appeal as required. **See** Pa.R.A.P. 341, Note ("Where . . . one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeal must be filed."); **Commonwealth v. Walker**, 185 A.3d 969, 977 (Pa. 2018) (holding that the failure to file separate notices of appeal from an order resolving issues on more than one docket "requires the appellate court to quash the appeal"); **see also In the Matter of: M.P.**, 204 A.3d 976, 980-81 (Pa.Super. 2019) (declining to quash due to the appellant's noncompliance with Rule 341 but announcing that this Court would quash any noncompliant appeals filed after February 22, 2019).

[6] At that time, only Mother's parental rights were involuntarily terminated, and the matter was relisted for July 30, 2019. **See** Permanency Review Orders, 5/29/19.

Mother's Brief at 4 (suggested answer omitted).

> Our standard of review for dependency cases is as follows:
>
> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 608 Pa. 9, 26-27, 9 A.3d 1179, 1190 (2010) (citations omitted); *see also In the Interest of L.Z.*, ___Pa. ___, 111 A.3d 1164, 1174 (2015). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G. & J.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted).

However, prior to reaching the merits of Mother's issues, we must determine whether we have jurisdiction to decide the instant appeal. In particular, we must determine whether the orders in question – the permanency review orders of February 6, 2019 – are appealable orders. DHS filed a motion to quash the instant appeal, arguing that the order was not final or appealable as a collateral order. Motion to Quash, 4/2/19. On April 30, 2019, this Court denied DHS's motion without prejudice, to be re-raised before a merits panel or in a subsequent motion. Per Curiam Order, 4/30/19. In its brief, DHS again argues that the permanency review orders in question are unappealable interlocutory orders and are not appealable as collateral orders. DHS's Brief at 1-2. Critically, DHS maintains that the orders were not an

indefinite suspension of Mother's visitation and, therefore, fail the third prong of the collateral order test. ***Id.*** We disagree.

It is well-settled that, "[a]n appeal lies only from a final order, unless permitted by rule or statute." ***Stewart v. Foxworth***, 65 A.3d 468, 471 (Pa.Super. 2013). Generally, a final order is one that disposes of all claims and all parties. ***See*** Pa.R.A.P. 341(b); ***see also In re H.S.W.C.-B & S.E.C.-B.***, 836 A.2d 908, 911 (Pa. 2003) (noting that with regard to dependency matters, "An order granting or denying a status change, as well as an order terminating or preserving parental rights, shall be deemed final when entered.") (citation omitted).

Instantly, Mother does not assert that the February 6, 2019, permanency review orders are final orders. Rather, Mother avers that the orders are appealable pursuant to the collateral order doctrine. ***See*** Pa.R.A.P. 313(a) (providing that an appeal may be taken as of right from a collateral order of a lower court). "A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b); ***see also In re J.S.C.***, 851 A.2d 189, 191 (Pa.Super. 2004). As we noted in ***J.S.C.*** with regard to visitation and dependency and collateral orders,

> . . .Clearly, a parent has a protected interest in the visitation of their dependent child, which is too important to be denied appellate review when attacked. Moreover, an order abridging a

parent's right to visitation with his or her child is separable and collateral to a dependency action because it does not require an analysis of the merits of the underlying case. Lastly, if appellate review of the issue were denied until a final judgment, the right of visitation could be irreparably lost because of the parent's rights in the dependent could be terminated *via* petition.

851 A.2d at 191 (internal citations omitted) (italics in original). This Court noted in **J.S.C.** that parents' appeal from indefinite suspension of parental rights in **In the Interest of Rhine**, 456 A.2d 608 (Pa.Super. 1983), "threatens either a prolonged, indefinite or a permanent loss of a substantial private interest."[7] Hence, it follows that the orders in the case *sub judice* would similarly be collateral.

Regardless, we further deem Mother's appeal moot as the supplemental certified record reflects that Mother's parental rights to the Children have subsequently been involuntarily terminated. **See** Decrees of Involuntary Termination of Parental Rights, 5/29/19.

As a general rule,

an actual case or controversy must exist at all stages of the judicial process, or a case will be dismissed as moot. An issue can become moot during the pendency of an appeal due to an intervening change in the facts of the case or due to an intervening change in the applicable law. In that case, an opinion of this Court is rendered advisory in nature. An issue

---

[7] However, while we noted parents' appeal from indefinite suspension of parental rights, we did not establish indefinite suspension as a requirement. **J.S.C.**, 851 A.2d at 191. Moreover, while DHS attempts to argue Mother's suspension was temporary and not indefinite, we disagree. The court suspended Mother's telephone contact "until further recommendation of the child's therapist." Permanency Review Orders, 2/6/19. Hence, this is in fact a suspension for an undefined, unspecified period of time.

> before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.

*In re D.A.*, 801 A.2d 614, 616 (Pa.Super. 2002).

The instant appeal presents a situation involving an intervening change in the factual posture of the case. Because Mother's parental rights have since been terminated, there is no longer a controversy. Mother believes her telephone contact with the Children should not have been suspended. However, now that her parental rights have been terminated, there is no legal remedy for Mother and the issue is moot.

Nevertheless, this Court will decide questions that otherwise have been rendered moot when one or more of the following exceptions to the mootness doctrine apply: 1) the case involves a question of great public importance, 2) the question presented is capable of repetition and apt to elude appellate review, or 3) a party to the controversy will suffer some detriment due to the decision of the trial court. *Id.*

None of the enumerated exceptions to the mootness doctrine applies herein. Based on all of the foregoing, we conclude that Mother's issue is moot and not subject to exception. Accordingly, there is no controversy and we cannot address the merits of Mother's claim. The trial court's orders are therefore affirmed.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/28/19</u>